IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEAN WOOLMAN | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 04-2091 |
| | : | |
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |

**MEMORANDUM AND ORDER**

Kauffman, J.                                                                                                                            November 3 , 2006

      Plaintiff Jean Woolman ("Plaintiff") brings this action against the United States ("Defendant") for recovery of certain money paid to Defendant as trust fund recovery taxes and for abatement of her remaining trust fund recovery tax liability assessment. Now before the Court is Defendant's motion for summary judgment. For the reasons that follow, Defendant's motion will be denied.

**I. BACKGROUND**

      Plaintiff worked for Open MRI, Inc. ("Open MRI") from its inception in the early 1990's until she was terminated in March 2003. See Memorandum of Law in Support of United States' Motion for Summary Judgment ("Def.'s Mem.") at 2; Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Mem.") at Exhibit A, Affidavit of Jean Woolman at ¶ 3 ("Woolman Aff."). Open MRI was a management company owned and operated by Alan Ottenstein, M.D.; it performed the administrative functions for various MRI facilities also owned and operated by Ottenstein. See Pl.'s Mem. at 1; Def.'s Mem. at 2. Prior to the establishment of Open MRI, Plaintiff was employed by Ottenstein as his office manager. See Def.'s Mem. at 2. Thereafter, Plaintiff was given the title "Administrator" and then later "Vice President." See id.; Pl.'s Mem. at 1; Woolman Aff. at ¶ 3.

1

Throughout her employment with Open MRI, Plaintiff had a "significant role in the day to day operations of the offices." Pl.'s Mem. at 1. Notably, Plaintiff played a role in the hiring and firing of employees, had check signing authority on the corporate banking accounts (along with Ottenstein), regularly opened Open MRI's mail, paid Open MRI's bills, gathered company documents for its outside accountant, and interacted with patients. See Def.'s Mem. at 2-4 (citing Deposition Transcript of Jean Woolman ("Woolman Dep.") at 52-54; 62-63; 68; 110-112); Pl.'s Mem. at 1; Woolman Aff. at ¶ 4. Plaintiff also played a role in selecting and retaining an outside company, Paychex, to serve as Open MRI's payroll processor and make Open MRI's federal and state payroll tax deposits.[1] See Def.'s Mem. at 5 (citing Woolman Dep. at 200-204). In addition, after Open MRI began experiencing financial difficulties, Plaintiff sometimes exercised discretion over which of the company's bills would receive first priority for payment. See Def.'s Mem. at 6 (citing Woolman Dep. at 101-102).

At some point in July 2001, Michael Bavaro, Open MRI's outside accountant, informed Ottenstein and Plaintiff that Paychex had not remitted Open MRI's payroll taxes for all four quarters of 2000 and the first two quarters of 2001. See Pl.'s Mem. at 4 (citing Deposition Transcript of Michael Bavaro ("Bavaro Dep.") at 48-50); Woolman Aff. at ¶ 6; see also Def.'s Mem. at 6-7. After learning of the unpaid taxes from Bavaro, Plaintiff spoke with Ottenstein who told her that he would take care of the problem and pay the taxes by selling some property he owned and suing Bavaro for malpractice. See Def.'s Mem. at 7 (citing Woolman Dep. at 193; 196); Woolman Aff. at ¶¶ 8,11. Plaintiff signed a new agreement with Paychex on July 24, 2001 to resume tax payment service for Open MRI. See Pl.'s Mem. at 3; Def.'s Mem. at 7.

Plaintiff continued to issue checks to pay Open MRI's bills after she and Ottenstein

---

[1] Under the terms of their agreement, Paychex was to make the payroll tax deposits automatically by deducting money directly from Open MRI's bank accounts.

learned about the delinquent taxes. See Pl.'s Mem. at 6; Woolman Aff. at ¶ 7; see also Def.'s Mem. at 7. Plaintiff also signed at least some of the checks Open MRI subsequently sent to the IRS as partial payment on the overdue taxes. See Def.'s Mem. at 7 (citing Woolman Dep. at 198-199). Even though Open MRI made payments on the delinquent taxes, it failed to pay its payroll taxes for the third quarter of 2001 when they became due. See Pl.'s Mem. at 5; Def.'s Mem. at 7.

After Open MRI failed to pay its payroll taxes for the last three quarters of 2000 and the first three quarters of 2001, Internal Revenue Officer Steven Wald conducted an investigation for the Internal Revenue Service ("IRS").[2] See Def.'s Mem. at 7. As part of the investigation, Wald interviewed Plaintiff and asked her a series of questions regarding her responsibilities at Open MRI. See Woolman Dep. at 255-286. Wald recorded the information provided by Plaintiff on a document called a Form 4180, which Plaintiff then signed. The Form 4180 indicates that Plaintiff managed the day-to-day operations of Open MRI, had hiring and firing responsibilities, managed employees, directed and authorized payment of bills, dealt with major suppliers and customers, negotiated large corporate purchases and loans, opened and closed corporate bank accounts, signed corporate checks, made or authorized bank deposits, and authorized payroll checks, either by herself or in conjunction with Ottenstein or Toni McKeown, an office manager at Open MRI's Lawrenceville office. See Def.'s Mem. at Exhibit 1.

Following the IRS investigation, both Plaintiff and Ottenstein were assessed for the six unpaid quarters of payroll taxes. See Def.'s Mem. at 8-9. Plaintiff filed an administrative appeal with the IRS. See id. at 9. Based on the record, the IRS abated the assessments against Plaintiff for all of the periods except the third quarter of 2001. See id. Plaintiff paid $100 toward the

---

[2] It appears that the payroll tax liability for the first quarter of 2000 had been satisfied by the time Wald conducted his investigation.

assessment and filed a claim for refund with the IRS which was denied. See id. Plaintiff subsequently filed this refund suit seeking judgment in her favor in the amount of $100 and an abatement of the remaining $63,274.62 that she was assessed for the third quarter of 2001. See id. The United States counterclaimed for $63,839.14 plus statutory interest accrued since June 14, 2004. See id.

## II. LEGAL STANDARD

In deciding a motion for summary judgment pursuant to Fed. R. Civ. P. 56, the test is "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." Med. Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must examine the evidence in the light most favorable to the non-moving party and resolve all reasonable inferences in that party's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, "there can be 'no genuine issue as to any material fact' . . . [where the non-moving party's] complete failure of proof concerning an essential element of [its] case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The party moving for summary judgment bears the initial burden of showing the basis for its motion. See Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). If the movant meets that burden, the onus then "shifts to the non-moving party to set forth specific facts showing the existence of [a genuine issue of material fact] for trial." Id.

## III. ANALYSIS

Employers are required by law to withhold income and social security taxes from their employee's wages and hold those taxes in trust for the United States ("trust fund taxes"). See 26 U.S.C. §§ 3102, 3402, 7501. The United States is required to credit employees for the withheld taxes even if the employer does not pay them. See In re Ribs-R-Us, Inc., 828 F.2d 199, 200 (3d Cir.) (citing Slodov v. United States, 436 U.S. 238, 243 (1978)). Accordingly, to prevent the United States from bearing the burden if an employer does not pay trust fund taxes in a timely manner, Congress has imposed personal liability on officers or employees of a company who are responsible for making such payments, but willfully fail to do so. See 26 U.S.C. § 6672; In re Ribs-R-Us, 828 F.2d at 200. The United States is not required to attempt to collect the taxes from the employer before assessing the responsible officers or employees under Section 6672. See In re Ribs-R-Us, 828 F.2d at 200.

Under Section 6672, "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid." 28 U.S.C. §6672(a). Courts have interpreted this statutory language as imposing two conditions in order for an officer or employee to be found liable for an employer's delinquent trust fund taxes: (1) the officer or employee must be a "responsible person," and (2) her failure to pay the delinquent tax must be "willful." Greenberg v. United States, 46 F.3d 239, 242 (3d Cir. 1994).

Once the IRS assesses a tax under Section 6672, a rebuttable presumption arises that the assessment is correct. Brounstein v. United States, 979 F.2d 952, 954 (3d Cir. 1992). The burden then shifts to the assessed individual to produce evidence demonstrating that the

assessment was incorrect because she either was not a responsible person within the meaning of the statute or did not willfully fail to pay the amount due to the IRS. Id. Summary judgment in a Section 6672 case is appropriate only where there are no questions regarding the assessed individual's control of company funds and decision making authority, or her knowledge of the payment of funds to creditors other than the Government that could have been used to pay the delinquent taxes. United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994).

Under Section 6672, a "responsible person" is "a person required to collect, truthfully account for and pay over any tax." Brounstein, 979 F.2d at 954 (citing Quattrone Accountants, Inc. v. IRS, 895 F.2d 921, 927 (3d Cir. 1990). "Responsibility is a matter of status, duty, or authority, not knowledge." Id. In order to be a "responsible person," an individual must "have significant control over the corporation's finances," but "exclusive control is not necessary." Greenberg, 46 F.3d at 243. An individual may be considered a "responsible person" if she "has significant control over the disbursement of corporate funds." Id. Courts deciding whether an individual is liable under Section 6672 often consider the following factors: (1) contents of the corporate bylaws, (2) ability to sign checks on the company's bank account, (3) signature on the employer's federal quarterly and other tax returns, (4) payment of other creditors in lieu of the United States, (5) identity of officers, directors, and principal stockholders in the firm, (6) identity of individuals in charge of hiring and discharging employees, and (7) identity of individuals in charge of the firm's financial affairs." Id. at 954-55. An employer may have more than one "responsible person" under Section 6672. Quattrone, 895 F.2d at 926.

The United States argues that Woolman is a "responsible person" because she had considerable decision making authority at Open MRI and exercised significant control over the financial affairs of the company. See Def.'s Mem. at 12-16. The Government points out that she

was able to sign checks for the company and that she exercised discretion over which creditors to pay when the company experienced financial difficulties. Moreover, she decided that payroll should have priority over all other payments and overruled Ottenstein when he expressed a differing opinion regarding which bills should be paid first. See id. at 14. The Government also notes that Plaintiff was second-in-command at Open MRI and was involved in management activities such as hiring and firing employees, interacting with patients, opening mail, gathering documents for the outside accountant, and compiling payroll information for Paychex. See id. at 15. These duties and responsibilities, the Government argues, demonstrate such an extensive involvement with the operations and financial affairs of Open MRI that Plaintiff cannot escape the tax liability.

Plaintiff, on the other hand, contends that she did not have the level of control over Open MRI's financial affairs that is necessary in order to consider her a "responsible person" under Section 6672. She argues that her position as "Vice President" of Open MRI was merely a titular designation without any specific powers or responsibilities, that she was never a shareholder of Open MRI, and that, even though she had the power to pay the company's smaller bills, Ottenstein made all of the large financial decisions pertaining to the business. See Woolman Dep. at 12, 39-41; Woolman Aff. at ¶ 3,4. She further contends that she was not involved in certain key financial matters such as the preparation or payment of the corporate payroll taxes, and that she was not aware that the payroll taxes for the third quarter of 2001 had not been paid until she was contacted by the IRS in 2002. Id. at ¶¶ 6,9,10. Plaintiff also argues that she played no role in determining the payment schedule that Ottenstein and Bavaro worked out to satisfy the outstanding taxes for the last three quarters of 2000 and the first two quarters of 2001 and that she was not involved in any decisions to direct payments made on unpaid taxes toward particular

tax periods. Id. at ¶ 13,15,18, 22, 23. Moreover, she alleges that she had no control over the decision to make payments toward unpaid taxes from those quarters as opposed to making sure that the taxes for the third quarter of 2001 were paid on time. Id. at ¶ 16.

Based on Plaintiff's factual assertions, there is evidence in the record from which a reasonable jury might infer that she did not have "significant control" over Open MRI's finances, and therefore, that she was not a "responsible person." Thus, the record in this case presents genuine issues of fact that must be tried, at least with respect to the first element of the test for liability under Section 6672. Accordingly, the United States' motion for summary judgment must be denied, and the Court need not address the parties' remaining arguments at this time.

## IV. CONCLUSION

For the aforementioned reasons, Defendant's motion for summary judgment will be denied. An appropriate order follows.


IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEAN WOOLMAN | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 04-2091 |
| | : | |
| UNITED STATES | : | |
| | : | |
| | : | |

## ORDER

**AND NOW**, this 3rd day of November, 2006, upon consideration of Defendant United States' Motion for Summary Judgment (docket no. 15), Plaintiff Jean Woolman's Response thereto (docket no. 16), and Defendant's Reply (docket no. 19), and for the reasons stated in the accompanying Memorandum, it is **ORDERED** that the Motion is **DENIED**.

BY THE COURT:

S/ BRUCE W. KAUFFMAN

BRUCE W. KAUFFMAN, J.